JONATHAN LEACH, Appellant, v. WILLIAM THOMAS, Trustee, etc., Appellee.

$\boxed{\begin{matrix} 27 & 457 \\ 163 & 111 \end{matrix}}$

APPEAL FROM LAWRENCE.

A judgment in favor of a corporation, if properly assigned, may be enforced after the corporation has ceased.

A trustee appointed by a court, though not invested with legal title to property, has such equitable title as will enable him to proceed in his own name in aid of the trust.

When a court of equity obtains jurisdiction, and gives to a party all that he had asked by a motion in a proceeding at law, he cannot complain of a proceeding that has not done him an injury.

ON the 25th of April, 1860, the appellee filed his bill of complaint against appellant, in the Lawrence Circuit Court, alleging—

That at the May term, 1843, at the Circuit Court of Lawrence county, the president, directors and company of the Bank of Illinois, recovered a judgment against appellant for $223, and costs of suit, upon which judgment execution was issued to the sheriff of Lawrence county, and by him returned without any levy or other service indorsed thereon.

That on the 2nd of July, 1852, a second execution was issued, and levied on the west part of the north-east quarter of Section 12, Town 3 north, Range 12 west, in said county, and returned indorsed "No sale for want of bidders."

That on the 10th of April, 1845, the president, directors and company of the Bank of Illinois assigned, transferred and conveyed, by a written instrument, called an assignment, to A. G. Caldwell and E. Z. Ryan, as assignees, all of the personal estate, rights and credits, notes, bonds and payments of every kind, due at the Bank of Shawneetown and the branch at Lawrenceville; and filed a copy of assignment with his bill.

That the judgment aforesaid was for a debt due at Lawrenceville.

That at the December term, 1850, of the United States Circuit Court for the district of Illinois, in the case of the Bank of Missouri against Ryan, Caldwell, Smith and Dunlap, assignees of the Bank of Illinois, the said court, by decree appointed said Caldwell, Joseph Gillespie and William Brown, trustees, to take charge of the effects of said Bank of Illinois.

That Caldwell alone had acted as trustee under said decree, and in July, 1851, departed this life.

30

That in July, 1851, said court appointed appellee, sole trustee, instead of said Caldwell.

That the assignees, in obedience to said decree, on the 29th of October, 1851, by their deed, assigned to appellee, as trustee, all the effects of said bank in their hands. Copy of the assignment filed.

That on the 22nd of April, 1859, appellee caused a *ven. expon.* to issue, and on the 21st of May, 1859, the sheriff sold said land to appellee, for $459.56, judgment and costs.

That appellant, at the September term, of Lawrence Circuit Court, 1859, served notice upon appellee, of his intention to move the court to quash the writ, upon which the sale was made, and set aside said sale—1st, Because said writ was issued contrary to law; 2nd, Because no judgment existed upon which said writ could legally issue; 3rd, Because no plaintiff was in existence at the time of issuing the same; and 4th, Because said land was not subject to execution, and was improperly sold.

That said motion is yet pending and undetermined.

The appellee shows that there is yet outstanding and unredeemed, of the Bank of Illinois, $30,000 in bills and certificates, and that there is due from said bank to the State of Illinois, $295,000.

That it is duty of appellee to collect and pay; that the land sold as aforesaid is part of the fund or means of redeeming the bills and paying amount due the State.

That Leach, the appellant, does not pretend that he does not owe the amount for which the land has sold.

That appellee is the trustee and representative of the creditors of the Bank of Illinois.

That appellant is justly indebted to trustee the amount the land sold for.

That by the act of the legislature, entitled "An act to reduce the public debt one million of dollars, and put the Bank of Illinois in liquidation," approved February 25th, 1843, the charter of said bank was continued four years from 4th of March, 1843.

That by an act of 25th of February, 1845, supplementary to the last recited act, the assignees were allowed four years to make final settlement, and by act of 10th of February, 1849, the time was extended to 1st of January, 1851.

That at the time of levy of the execution, and the sale of said land, appellant was in possession, claiming title to said land.

That since service of notice of motion, the appellee has examined records and made inquiry in regard to appellant's

title to said land, but can find none; that he is informed that a son of appellant in his lifetime, now dead, claimed to be the owner.

Prays, that appellant be required to answer and say whether he has title to said land, or has had since the rendition of said judgment, and if he has parted with said title, to whom and when. That appellant be enjoined from further prosecuting his motion to set aside sale, and from selling the land, and if on hearing that he make his selection, if the court shall find appellant's title to be good, to pay the amount it sold for, or permit the sale to stand. Or if it should appear that the sale passed no title, that sale may be set aside, and a decree for the amount of the debt aforesaid be rendered against appellant in person, and execution be awarded; and prayer for general relief.

Injunction granted, issued and served on the 31st of July, 1860.

The defendant below, and appellant in this court, filed a demurrer to bill of complainant and joinder. At September term, 1860, the demurrer was overruled, injunction made perpetual, and decree that the appellant pay to the appellee $437, amount of principal, and $59, costs of this suit, and on failure to pay, that the land be sold by the master, to wit: The west part of the north-east quarter of Section 15, Town 3 north, Range 12 west, or so much thereof as will pay the debt, to be taken off the north side, and that the defendant surrender the possession to the purchaser.

The errors assigned are, that—

The court erred in awarding an injunction to restrain appellant from prosecuting his motion to set aside sale of land under execution.

In overruling appellant's demurrer to the bill of complaint.

In making injunction perpetual.

In decreeing that there was to appellee as trustee, from appellant, principal and interest on judgments in appellee's bill mentioned.

In decreeing the land to be sold.

In ordering said land to be sold upon an insufficient, vague and uncertain description.

Bowman & Harrow, for Appellant.

W. Thomas, for Appellee.

Walker, J., delivered the opinion of the court. The fact

that the charter of the bank may have expired before this judgment was paid, does not release the appellant from its payment, if there is any person who holds either the legal or equitable title. If the plaintiff had been a natural person, and he had assigned it, the assignee would have acquired an equitable title, and it could not be said that the death of the plaintiff would release or satisfy the judgment, and prevent the assignee from having satisfaction by an appropriate remedy. Corporations receive from the legislature an existence, endowed with many privileges and capacities of individuals, and of these usually the right to sue for and recover judgments for their debts. And having whilst their legal existence continues recovered a judgment, and assigned it by legal authority and afterwards ceasing to exist, cannot satisfy or discharge the debt.

The act of February 28, 1845, (Sec. 3, Sess. Laws, 246,) authorized and required the bank, if it should accept the terms and conditions of that law, within thirty days after such acceptance, to make an assignment of all their real and personal property to assignees named in the act; all of their personal estate, rights, credits and debts of every kind due them at Shawneetown, and the branch at Lawrenceville, to Albert G. Caldwell and E. Z. Ryan. The assignment was made on the 10th of April, 1845, by the bank to them, as required by the act. It required the assignees to collect the debts, and to make compromises as they might deem most advantageous. The act also gave the assignees four years from its passage to make a final settlement of its affairs. It also appears, that in a proceeding in the Circuit Court of the United States for the district of Illinois, against the assignees at the December term, 1850, William Brown, Joseph Gillespie and Albert G. Caldwell, were appointed trustees of the property of the bank. And the General Assembly, by an act approved February 15, 1851, (Sess. Laws, 120,) declared that they, or either one of them, who should give bond in pursuance to the decree, should be considered as legal successor or successors of the assignees of the bank.

The act also conferred upon such of them as should give bond, the right to sue and be sued, to prosecute and defend all suits already brought in the names of the assignees, to sue out an execution on all judgments rendered in favor of the bank or the assignees; which executions are required to issue in the names in which the judgments had been rendered, and be controled and collected as they might have been by the bank or assignees. Caldwell only qualified, under the first

decree, and in July, 1857, departed this life, when the court appointed appellee, sole trustee of this fund, who proceeded to, and has ever since acted in that capacity.

Whilst the assignment by the bank under the act of 1845, and the act of 1851, may have transferred, and no doubt did transfer the legal title in the property and debts of the bank, it does not follow that it vested in the appellee, under the decree of the court. It was obviously upon the supposition that such a decree did not, that induced the act of February, 1857, declaring the trustees to be successors of the assignees of the bank, and conferring that right.

But whilst the trustee appointed by a court, to take charge of property, is not invested with the legal title to the property, he has by that means conferred upon him the equitable title with a power to execute the trust. And it is believed that the uniform practice of all courts of equity authorizes the trustee to proceed in his own name in all proceedings in equity. Hence it can matter but little whether he has the legal or equitable title. If it is the latter, he may enforce the claim by bill.

In this case, however, the appellee alleges that he is unable to find any title in appellant to the land of record. And alleges that he supposed that the appellee owned the land at the time of the levy, but is informed that a son of appellee, since deceased, had claimed to own the land, and prays a discovery of what title, if any, the appellee had to the premises. And as appellee showed himself the trustee of the fund, the court acquired jurisdiction to entertain the bill. And the court having acquired jurisdiction, it was proper to proceed to complete justice, between all parties. By the decree the court in effect quashed the execution, the levy and sale, and thereby gave the appellee all that he could have obtained by his motion. When that was done, nothing more could have been attained by proceeding with the motion. And as it did appellee no injury, he cannot complain of the injunction.

Then as the court had acquired jurisdiction, and as the judgment was still unpaid, it was proper that the court should proceed to decree a sale of land for its satisfaction. There was no necessity of turning the appellee over to a court of law, to seek his remedy when all the parties were in court, complete justice could then be done. The decree of the court below is affirmed.

*Decree affirmed.*